Case No. 24-12-20 Vasquez v. Yonkers Public School District Christopher Berlingeri Christopher Berlingeri has her personal Dropbox to store, among other things, salacious text between the principal and her lover and nude photos of the principal's lover, along with photoshopped pictures of the principal's rear end that was taken in the school. So you're right, that is disturbing, and maybe if she had filed a Title IX complaint about that, the school district's failure to investigate might be deliberate indifference and it might be an act of discrimination. But isn't it kind of odd to say that the failure to investigate it is retaliation for filing the Title IX complaint about a different incident when, in fact, they investigated that Title IX complaint and found that she was right and provided a remedy? Correct. And precisely why we bring this appeal, Judge, we think the rule in Fincher that was a precedent from this court in 2010 is unworkable in the MeToo era. So what we have here is we have an individual post-MeToo complaining about sexual harassment from her principal. At the time, though, to your honest question, she... So you're saying that under our precedents, it would not be retaliation, but you're asking us to adopt a different rule? Correct. I was called out by the magistrate judge for having no precedent for this position. And it's a novel concept that I want to forward with this court because it would align with Title VII's remedial duty to stamp out workplace discrimination. This is a 1983 case, but applying that sort of logic with retaliation. The point I wanted to make about the plaintiff or the appellant reporting this, she reported this to her union president. The union president was the individual who sought the transfer from the principal. The union president... I'm sorry. So can you specify, like, even if I was sympathetic to the...  Even if I were sympathetic to the cases that suggest that sometimes a failure to investigate could constitute a harm, it's usually because there's something else associated with not investigating. You have not alleged or not articulated what the harm was beyond failing to investigate. So what harm has befallen your client except for the fact that they didn't investigate something that they already said your client was right on? So we're focusing on the Cassano complaint. That was the complaint against the assistant principal for attempting to kiss her. There was no future harm after that. And the district court properly applied Fincher to another example case, I believe it was called JBM. They applied it. But basically, the worsening of the plaintiff in this case came from the fact that it was her principal's complaints that went uninvestigated. So more serious harm. The district was aware of the Title IX complaint with Cassano. And in fact, the record reveals that the Title IX coordinator testified that the plaintiff should not have been surprised that it was founded. Yeah, no wonder. Because the complaints against her principal, which were more serious in nature, were communicated by the superintendent... Sorry, the union president to the superintendent. And the superintendent was more worried about who the principal was sleeping with and the details thereof and just transferred the secretary. And as I... I mean, she asked for the transfer, right? So like, even if the principal had just heard of all of her complaints, if she then emails him that day and says, I would like to be transferred, that's a remedy she is requesting. Only because her Title IX complaint was passed around the school. We alleged in the complaint that after the moment she filed the Title IX complaint, there's a janitor showing it on her phone or other individuals squawking about this assistant principal trying to kiss her. So she says, I don't want to be here anymore. And hey, union president, by the way, a bunch of other crazy stuff happened to me. See what... There's no doubt that as the record is developed before us, what your client experienced from the principal and the assistant principals is beyond troubling. But you're now suing the school district and it's...  Superintendent, thank you. And so I'm not sure how some of these arguments that you're making fit into the claims you want to bring against those two defendants. So, yeah, we wrote a Monell claim as well, tying it on to the retaliation. We believe that the... Well, all of your, whatever your claims are against the Yonkers Public School District and its superintendent, I'm not sure how some of what she experienced at the hands of the principal and assistant principal, how that figures into why you've got a claim against the school district and the superintendent. Well, we would argue that, in effect, the de facto policymaker for the school district on these particular instances of whether or not to investigate a sexual harassment complaint lies with the superintendent. We allege he stuck his head in the sand like an ostrich, turned a blind eye, transferred the young lady, and that's it. So for the purposes of the Monell claim, you said you're not a policymaker just because you make a discretionary decision that the municipality doesn't overrule, right? There's no evidence that the municipality had a policy of refusing to investigate Title IX complaints. In fact, they investigated the one right here in this case. Yes, Your Honor, but it wasn't a Title IX complaint that went uninvestigated. It was an informal complaint from a school secretary to her union manager with, as the record shows, very serious allegations of sexual harassment. And so the issue becomes whether or not when a sexual harassment, and this goes back to the Me Too era, if a serious issue of sexual harassment is presented and a policymaker or decision maker just says, we'll transfer her out, we're not looking into it. There's no dispute. That's not all that happens. I mean, they transfer her out almost immediately. Yes. And then there are the investigations, which result in certain terminations and a resignation. What is it that they didn't do that you would say supports this claim? Well, they never investigated this sexual harassment by the principal, and the principal is a female. Yeah, but I think the part that's challenging is that you're shoehorning it into a retaliation claim. So the question is, do we have to extend our law of how we understand retaliation? Yes, Your Honor. I believe that the scope of material adversity is narrow here. I think that Fincher, although had a good cautionary tale for the plaintiff's employment bars to not bring cases premised solely on uninvestigated complaints, I ask this court to go a bit further in that when someone does bring meritorious complaints forward, if they are not investigated, and to Your Honor's point, a worsening of the conditions occur, then that Fincher should be expended. Now you're conflating a bunch of issues, and I spent a lot of time on this case to try and make sure that I understood it. You're not actually challenging the transfer as an adverse employment action, right? She agreed to it. There's a couple of lines about maybe she has to work a half an hour more. In the beginning, you explained that this was really disruptive to her child care and the school work back. So you can't say, I think, the worsening of the conditions as a – like, worsening conditions could be retaliation, but the only worsening – the only condition that has changed is that she's moved. So when they have said, we agree, you were harassed, it was well-founded, we have fixed it by transferring you outside of that toxic place. We have fired some of the people involved. And then you're saying, oh, I want you to look into this other thing that was also harassing when the fix would have been the same by moving her and by getting rid of the people involved. Where is the retaliation? It's only not doing it again for – because they've already, in their mind, solved it, right? So where is the case law saying that they have retaliated by not performing an investigation that they think has done the entire universe of what it takes to fix this for your client, or at least to fix the environment for your client and for somebody else coming in? Well, to the extent that this particular complaint, it did go uninvestigated, the remedy essentially would have been the same. But I think the issue of adversity goes back to Burlington, so it's the Supreme Court's precedent. And with respect to Burlington, I think that material adversity can be brought in here because this particular plaintiff is still in this situation. Again, we have a current employee who – she was dissuaded. Before we talk about material adversity, which I will ask about, but it's retaliation for what? For filing the other Title IX complaint? Precisely, for filing the Title IX – for daring to speak up. Right, but – so I agree. I mean you're saying it's an extension of our precedence, but it does seem to be within our precedence. If you had evidence where she files a real Title IX complaint and then she complains about other sexual harassment to the superintendent, and the superintendent says something like, oh, that woman is a troublemaker. She filed that other Title IX complaint. We don't like people who do that. I'm not going to pay attention to anything else she says. Maybe that would be retaliation. But the district court said there is no link between the two things because she asked for the transfer, and he didn't make a deliberate decision not to investigate it. At the most, it's negligence or maybe non-action, right? Well, the way I could argue a continuation of the causal link between the protected activity and adverse action is that if the transfer occurred for her reporting, the plaintiff reporting, the principal – If it did, but she requested it, right? That's definitely right. I agree with you. Yes, Your Honor. If in fact the district court – sorry, not the district court, the school district said that, oh, we don't like people who file Title IX complaints. They're troublemakers. Let's transfer her to the boondocks or something to get her out of her hair. Maybe that would be an adverse action. But in fact, she requested the transfer, right? But going back to my sub point, which I think in the record wasn't as flushed out in the district court's opinion, is that my client's Title IX complaint within days was passed around. So that put a bad taste in her mouth. There was deposition testimony on that as well. She filed this and the school's janitor is asking her – So maybe the retaliation claim could have been filed as leaking, right, as humiliating her, but you didn't argue it that way, right? You've argued it that the failure to investigate a second claim involving the same locus of facts for which the same action would have been taken is the adverse action. And I don't know where our precedent says that failing to investigate is a harm in and of itself. It has to be in connection with another harm. And I'm trying to figure out what the other harm is because it's not the transfer because you've already said that it's not. So what is it? I mean, is it just crassly? She didn't get – you didn't ask for damages and now you want this because you think it will help? Like where – what is the injury? I wish I had that much foresight. No, I think this case maybe fell apart on me a little bit. But to be honest with you, what I do think is that under totality of the circumstances, the past two cases we had here with the restitution and the immigration case, the totality of the circumstances in this case, if the court were to reassess Fincher in a post-MeToo era, I do believe this is relevant because that was decided in 2010. People have a more incentive to complain now. I'm sorry. You keep talking about revising. So what's the old principle and what's the new principle you're asking us to adopt? Okay. So the old principle of Fincher says essentially prior uninvestigated complaints cannot constitute advert action unless there is a further worsening of that scenario. Would you say that failure to investigate is always an adverse action regardless of the circumstances? Is that what you're saying? No, absolutely not. I think that under – this is what I would posit, Your Honor, that under totality of the circumstances, uninvestigated complaints can be an adverse action and applying the rule if there's worsening. I think that there was too narrow – I think that this matter – But we have said that, right? We have said that failure to investigate a complaint can be an adverse action. It can't be the very complaint that you filed because the failure to investigate would be the act of discrimination. It wouldn't be retaliation for filing the complaint. But as I said, it seems to be consistent with her precedence. If you file complaint number one and in retaliation for filing complaint number one, the school district says, we're not going to investigate anything else she says because we don't like her. But the district court just wasn't persuaded that happened here. In fact, they didn't – it doesn't seem like they were upset about complaint number one. They investigated it and determined it was well-founded. Well, they waited nine months to tell my client that, and she reached out to that specific Title IX coordinator twice. In person, she ran into him at the district office's by happenstance in the elevator and said, hey, I have something to tell you. This guy tells her, why don't you put it in writing? She does. She puts it in writing, and in the writing, the record would reflect this. The Title IX coordinator isn't even a defendant in this case, right? Well, we can't. All the individual liability got washed. She didn't file any notice of claims. She didn't do anything. This also goes to show that she was reasonably dissuaded. This would be the other adverse action. She was reasonably dissuaded for three years, came to me with like two weeks left on the statute of limitations, and we filed the case. She didn't file anything with the EEOC. She didn't file any other complaints. But the reasonable dissuaded precedent that gets cited is certainly outside of our circuit has another harm. Yes. There's a harm affiliated with it, like you might die because they're not investigating it and you've been subject to death threats. In this circumstance, you're not articulating, I think, or you're not. And I want to give you the opportunity to do that. What is the harm she experienced that occurred because they didn't investigate it? They already did everything she asked for, right? Yes, you're right. You know the bad people. They've said they've vindicated her. She has a piece of paper saying it was well-founded. And they moved her to another school that was consistent with the request of hers. I think that the purpose of the appeal is to look at the record. Hindsight's 20-20. During that time frame after she made this complaint, I like to bring the court back, and I tried to argue this to the district court, that during this relevant time frame, she waited nine months for the Title IX complaint to be decided. That is adverse. It was not found to be adverse. We argue that the totality of the circumstances, the waiting for the Title IX complaint, her other complaints being uninvestigated, arguably a worse transfer, but we'll give up on that. And just her reputation. She had her Title IX complaint passed around. This woman complained about it. Yeah, right. So I thought you might say you might focus on that. That is a harm to her if, in fact, she's still living in the Yonkers community, and her reputation is being trashed by having the complaint thrown around and people saying things. Certainly if she was still living, if she was still working in the Yonkers school. She does, Your Honor. It might be hostile. Oh, I'm sorry. For the employer.  Yes, Your Honor. So that might be, I don't know, that's kind of a harm. It's just that it doesn't seem like they intentionally subjected her to that harm in retaliation for the earlier complaint. Right. If you had argued that in retaliation for her complaint they leaked her and made it non-confidential and humiliated her, we'd be in a different position. Instead, you're saying that they didn't investigate something that would have resulted in the same actions had they. Well, I think there would have been a bit more inquiry and probing onto Medina. So the principal's name is Medina. Her husband, as is on the record, was a Yonkers policeman. The superintendent was concerned about who the Medina was having an affair with. The principal was egregious in this, and she quit. So there was no accountability. It wasn't like there was a Title IX complaint for this principal. Now she's not even an educator anymore. So she quit. The only discipline invoked in the record and the evidence supports that is the Cassano, the assistant principal. But once the principal quit, what else would the school district have done? I mean, that's my— Well, they could have hired an outside firm and perhaps looked into it. I mean, a lot of times people leave. I mean, the problem we're all having is how is your client harmed, whether they do or don't, once the person is removed from the school district? Your Honor, I think that's why I'm here, because I think it's a little bit more metaphysical. She has to be there. She's in this school right now. You basically want us to say that if you don't do it within three months or you don't do the investigation within five months or whatever, you have a federal claim. And I'm not sure where we would locate authority to say that. I think what I'm saying, Judge, is when you bring forth meritorious complaints of serious sexual harassment, this is where I think that this case is an outlier. I think that the Fincher rule is a good rule. I'm just asking to expand it a little bit in these very anomalous situations where there's no evidence and the respondent certainly can't cite any evidence that my client's not credible with these complaints. We have pictures. We have a lot of evidence that this occurred. But your complaint is they didn't investigate. And you're saying that even though the malefactors are gone and your client is in a new location, she's still entitled to something more? And what is that? I think a full investigation into those complaints. So even as this date- There is no claim. There is no federal claim that you are entitled to an investigation. You're entitled not to be discriminated against, to be compensated if you have been pursuant to a policy. And you're entitled to have that discrimination cease. But there's nothing in the law that suggests what you're entitled to is a full investigation so all of this can be aired. That I just don't see. Well, I think it goes broader to the remedial purposes of these sorts of laws. You're suggesting that the reason they did it was to retaliate against her. And that becomes problematic. It is right that if the school district made a deliberate decision or was deliberately indifferent to her complaint, that itself might be an act of discrimination and you would be entitled to some kind of an investigation or some kind of relief. But you're not even making a discrimination claim. You're making a retaliation claim. So everything hinges on whether they failed to investigate in retaliation for the earlier complaint, right? Right, and I think- Is the reason why there isn't a discrimination complaint for deliberate indifference against the principal or somebody else because of all these timing problems? Well, the district court rejected that. In a motion to dismiss, Judge Bruschetti rejected that. It's not on appeal here. This is a summary judgment case, and like I said, this case may have gotten away from me a bit. But I think that this is good argumentation. We've got to try. Thank you for your time. Thank you very much, Mr. Berlingieri. You've reserved time for a bow, so we'll hear from you again. But let's turn to the appellee, Mr. Walter. Thank you very much and good afternoon. May it please the court, my name is Daniel Walter, and I am representing the defendant's appellees on this appeal. If I might, as a preliminary matter, I'd like to clarify two points. One, regrettably, I think there was some confusion in the briefing. And our preliminary argument in our brief is that you should affirm below based upon a waiver of the causation argument. And I would like to withdraw that argument. The confusion below was that there was a claim about the transfer, and that the district court did find there was no causal connection. But as the court has been focusing on today, the issue now on appeal is about the failure to ensure. And you agree that if, in fact, they failed to investigate the subsequent complaint because they were angry about the earlier complaint, that could be retaliation, right? That goes to the ‑‑ I'm sorry, Judge Raj, did you want to? Yeah, I'm a little confused as to what you just said. You're withdrawing what argument in your brief? Our very first argument. And when did you discover that you were going to withdraw the argument? Literally as I was preparing for ‑‑ Well, because the court's been preparing for this, and we're now told that 34 pages or some quantity of it is just now irrelevant. Your Honor, I ‑‑ Where does that leave us with the defendant's argument, with the plaintiff's argument? I'm trying to be as forthright with the court as I can. I came upon it last night. But now the plaintiff has an argument. You responded to it with point one. Yes. What's your response to plaintiff's argument now? Point two. It still doesn't ‑‑ it still should be affirmed, and I was going to explain why, Your Honor. You're saying that she hasn't waived the issue of causation. Yes, that's right. So that shouldn't prevail on that issue. That's exactly right. So you want to raise a new argument? No, no. I'm just relying on point two. Oh, okay. Okay, I'm not raising anything new. I'm trying to be candid with the court and correct an error. So the second point I wanted to clarify is the Fincher case. The Fincher case is law of the circuit. And Fincher holds that the failure to investigate the initial complaint itself does not constitute retaliation. What Fincher did, though, was hold open the question of whether failure to investigate a second complaint based upon the first complaint is retaliation. The court left that question open. It remains undecided. What I would like to say, frankly ‑‑ Well, I mean, it remains undecided, but Burlington suggests that it could be if it produces an injury, right? Like, right? I mean, you're not disputing that. Yes, I'm not saying the court ‑‑ in fact, my next sentence was I don't think the court needs to address that question here for a Burlington reason, which is there is no reasonable jury based upon these facts that could find that plaintiff here was actually dissuaded from making further complaints. But what if we understand her claim not as a failure to investigate, but rather a failure to protect her from future sexual harassment? So not past sexual harassment, but future sexual harassment. Does that change anything? Yes, Your Honor, because I think it goes to the point you were raising, which is where is the manifest harm there? It didn't happen. And if I may just revert to the ‑‑ Well, I know part of what she complained about was the complaint being passed around and her reputation being harmed. It's true she's not in that school environment anymore, but she lives at Younger's, and those are her former colleagues. So why isn't that a harm to what she says? You know, that may have been a fruitful argument. It wasn't litigated. It wasn't raised to the court as a claim of harm. It's not before this court on the summary judgment motion. But we don't have record about it. Right, right, exactly. We just have just somebody saying that it happened. Precisely. I would also go so far as to say that it's drawn into question again under the Burlington case. You know, the case that's probably most controlling here is this court's decision in Tepperwine. Tepperwine involved a situation where there was an employee who complained of sexual harassment. And, in fact, the employer responded to it and told the harasser, essentially, lay off, stop this. But then there was a continuation of ongoing events where the plaintiff was called in on multiple investigations. On one occasion, he received a letter of caution and counseling, which was later withdrawn from his record. He was the subject of hostile kind of back and forth with his superiors. And the jury actually found that there was retaliation. But this court, on appeal, upheld the district court's entry of judgment as a matter of law, reversing the retaliation claim, finding that both individually and collectively, all the acts that had been complained of were not materially adverse. Here, if we look at the chronology of what happened, unfortunately, and we're not arguing the propriety of the principal's behavior months before. What happened, however, is this vice principal tried to kiss her. She went and complained to the principal. The principal told her to make a complaint to the superintendent. Practically the next day, the superintendent transferred the vice principal out. He was out of the school. He responded. Then there is some conflicted discussion about whether or not the union president actually told the superintendent about the prior sexual harassment. That's an open question. In fact, I'm not going to rely on that. But what goes on afterwards is quite telling. She tells the union president, I really am uncomfortable here. I don't like it anymore, whether it's for the leaking or whether it's for other matters. I'm uncomfortable here. The union president says, okay, write to the superintendent, tell him you want to transfer. She does. She's transferred immediately upon request. She then raises with the school that her child care needs are in conflict with her new schedule. They change them immediately. She then, and a point was made, Dr. Kizada did not stick his head in the ground, okay? This was not any deliberate indifference. He delegated to the deputy director of HR this case to be investigated. Well, he delegated the original Title IX complaint. Correct. It's not clear that he acted on the other. As you say, there's a fact question about whether he was informed about the conduct of the principal. Put that aside, if you may, Your Honor. All the other, and there were multiple writings in this case that continued over months from the plaintiff to the various HR officials. True, they said, I'd like to talk to you. I have some information. It wasn't until, Your Honor, I think it wasn't until November of that year, which is following on from, this all started in March. November of that year that the plaintiff first raises, not even directly, indirectly saying, I have some information about the Medina and the other vice principal. First raises in a written thing. In a written thing. First time, but doesn't say anything about it. Now, whether Voorhees, the EEO officer. You're just saying it's plausible that the superintendent didn't know about it. Right. But, you know, that's a fact question, as you said, right? It's possible that. But I'm saying more than that. I'm saying that what occurred thereafter does not constitute any kind of material adverse action under this case, under this court's decision, Tepperwine, or under Burlington. So can I ask, this comes to us as a retaliation claim, and so therefore we're focused on the elements of adversity and causation. Correct. If it had been made as just a discrimination claim based on deliberate indifference, would she have stated a claim? If she raised a fact question as to whether the superintendent was made aware of the conduct of the principal and he didn't do anything? Maybe he was deliberately indifferent. I think that would be a very steep hill to climb in light of the fact that there were other EEO and HR employees actively engaged. I grant your honor that it was on the first claim. But she had all that opportunity. So you're saying the reasonable inference would be that they weren't deliberately indifferent to her complaints, and if they failed to respond it was because of negligence or something else, which wouldn't rise to deliberate indifference at this point. Absolutely. But then you might have to litigate that because there was a fact question about whether he was informed. But that's not what the- No, I get it. That's why I was- You know, and it also relates- We have a narrow question in front of us. Yes, your honor. And our concern is with the plaintiff, Ms. Vasquez. But on another level, when one reads the facts of this particular case, it's difficult to ignore the fact that we're not dealing with any old business. We're dealing with a public school system. And the people in charge of the school and dealing with children- It's atrocious, your honor. I hope that someone is wondering how it took so long to find out that the people in charge were as irresponsible, if that's a word I can put to it, as these folks were. I'm sure there's been an educational experience through this litigation, and I will not contest the court's assessment of what happened. It's deeply troubling. It's just that, for whatever reason, through the course of the proceedings that they actually move forward on- As I said, I know we have a narrow question for us.  The same thing goes to the Monell issue. I'm sorry, your honor. Did you want to ask a question? Yeah, just a quick one. I mean, if she had filed a Title IX complaint based on the conduct of the principal and the assistant principal, there's no reason the school district wouldn't have investigated that, right? Of course. I mean, that's our position for sure. And while it's not in the record, the principal is gone. And just to think about it, Cassano, the vice principal, who tried quite inappropriately to kiss her, was transferred immediately. Transferred, not fired? He was not fired. He was transferred to a different school, and although I don't know if it's in the record, he was- Well, again, it's not for us. Right. In other words- One would question whether taking someone who engages in that kind of conduct and just moving them somewhere else where they may engage in that kind of conduct- That would be a horrible situation, but it's not in the record. That's not for us. But he was transferred immediately as an interim measure while you were investigating the complaint, and presumably you would take a different action upon an adjudication of the complaint, right? Well, what is in the record is that he confessed to it, and they found his actions and the complaint to be well-founded. So insofar as that's concerned, that is in the record. Can I just ask, the Board of Education has not delegated policymaking authority to the superintendent with respect to sexual harassment. No, it has not. And I wanted to get to the- And the official policy is usually that they must all be investigated. Is that correct? Yes. Okay. So there was a gap for some reason. The second one wasn't. I won't quibble about that, I think, because it involves, to some extent, this unresolved fact issue. But the fact is that months and months of continuous reference to the first complaint, which is the Cassano complaint, which plaintiffs made to the EEO office over and over again, which also stands to show that she wasn't really dissuaded by what had happened, but never mentioned the other horrible events. So whether- I mean, is there a gap? I mean, the federal regulations say there's an obligation to investigate a formal complaint, which would be the written complaint. But does the district normally investigate informal complaints, like the mentioning it to the EEO president and so on? You know, I don't want to venture a guess on that. But I would say that, at worst, it would be, as Your Honor characterized it, as negligence. There's nothing in the record to suggest- They should have at least encouraged her to file such a complaint or something to that effect. There's nothing in the record, for example, to suggest that Dr. Quesada directed somebody, don't investigate this. There's no evidence whatsoever about that. I mean, after at some point it was in other people's hands and they pursued it, whether they dropped the ball, you know, it's quite possible. But that's not Monell liability. It's Respondiat liability, and that wouldn't attach. You know, if the court has no other questions, I'm happy to- Okay, thank you very much, Mr. Alter. We'll turn back to Mr. Berlingieri on the rebuttal. All right, thank you, everyone. I'll be very brief. I mean, to my colleague's point with respect to adversity on the Title IX complaint. So the idea here is, well, why didn't Ms. Vasquez go ahead and file another Title IX complaint? Well, if she had to wait nine months, not have her questions responded to, and then- We'll just say this for the record. The first time that the plaintiff ever received the Title IX report was as an exhibit to the defendant's motion to dismiss, despite even our previous requests. So if she gets her Title IX complaint report, which at deposition they said, well, you know what? He admitted to it. You know what happened. No big surprise here. That's what put a bad taste in my client's mouth. And I think that that is what the adverse action continued would be, that if she doesn't feel safe complaining in an environment where her complaints are not going to be investigated for nine months, she literally has no update or correspondence with the Title IX coordinator in terms of what's going on. And secondly, which I should be remiss to say, this deposition, this came out. They have 15 days under policy, under their Title IX policy, to do something, to start the investigation, to communicate to the complainant as well. Didn't happen in 15 days. Happened in nine months. I think that that reasonably dissuaded my client from logging in. Well, they did something, right? Because obviously they did do the immediate transfer, and they did do an investigation. The report wasn't finalized for nine months. Well, the Title IX, by policy, the Title IX coordinator prepares a report for the superintendent, and the superintendent then provides that to the board. That didn't happen until way later, months later, Your Honor. And I think that that's why I think it's hard to do it in this de novo review, like 30,000-foot view, but for the school secretary at that time waiting on pins and needles about not getting her Title IX report back. She doesn't know if it's going to be founded. The Title IX coordinator was a bit arrogant at his deposition and said, well, she knows what happened. What is she waiting for this report? But the purpose of Title IX is that people in education, if they make these complaints, well, there should be some dialogue. There should be some disclosure to the person bringing the complaint. And that's why, and I don't want to focus on it and say it again, but in a post-MeToo world, people who want to bring complaints about sexual harassment should feel safe doing so. That's it. Okay. Thank you very much, Mr. Berlingieri. The case is submitted.